## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GUY MARSHALL,** | : | **CIVIL NO. 3:09-CV-2531** |
| | : | |
| **Plaintiff,** | : | **(Judge Caputo )** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FEDEX GROUND PACKAGE** | : | |
| **SYSTEM, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case underscores the importance in life, and in litigation, of being both timely and complete.

This is an employment discrimination case brought by the Plaintiff, Guy Marshall, who is  proceeding *pro se.*  Marshall was formerly employed by FedEx Ground Package Systems. Inc.  Following the termination of his employment in October 2005, Marshall, who is an African American male, lodged an administrative complaint against FedEx with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC). In this complaint, Marshall made two narrowly-tailored claims that he had been retaliated

1

against by his former employer for protesting disparate treatment afforded to female FedEx employees.

This complaint was resolved in September 2009, and through a letter dated September 15, 2009, the EEOC notified Marshall of the administrative resolution of this complaint, an event which triggered Marshall's responsibility to file a lawsuit within 90 days if he wished to seek further redress in court.

On December 24, 2009, Marshall filed this complaint in federal court. (Doc. 1.) Four months later, on April 26, 2010, Marshall filed a second, amended complaint in this case, (Doc. 19) which substantially broadened the Plaintiff's allegations beyond those initially lodged with the EEOC and the PHRC. The submission of these new claims in Marshall's amended complaint relating to events which occurred some four years earlier in 2005 triggered yet another timeliness requirement under federal law. Specifically, this late filing implicated Title VII's requirement that employees exhaust all administrative remedies relating to alleged employment discrimination within 300 days of the acts which are the subject of their work-related discrimination claims.

FedEx has now moved to dismiss Marshall's complaint, first citing Marshall's failure to timely exhaust his administrative remedies as to the new, and broader allegations set forth in his complaint. FedEx also contends that, to the extent that Marshall has filed a pendant state claim of defamation against the Defendant, that claim is both meritless and is barred by the state statute of limitations for such actions.

Finally, in this motion FedEx contends that Marshall's retaliation claims fail as a matter of law, and should be dismissed.[1]

In order to fairly address these issues we set a schedule for briefing of these questions, which required Marshall to submit a brief in opposition to this motion to dismiss by June 18, 2010. As this briefing deadline approached, Marshall acknowledged through e-mails sent to the Court his receipt of this briefing schedule. Through e-mails Marshall also informed the Court of his intention to comply with

_____

[1]Initially in its motion FedEx also argued that Marshall's complaint was procedurally flawed in that Marshall failed to file his complaint within 90 days of receipt of the EEOC's dismissal of his charge of discrimination, a failure which mandated dismissal since a complaint raising allegations that Title VII was violated must be filed in the District Court within 90 days of Plaintiff's receipt of a right-to-sue letter from the EEOC. 42 U.S.C. 2000e-5(f)(1); Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). In order to maintain a claim for relief in federal court under Title VII, a plaintiff must file a complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149 (1984); Burgh v. Borough City Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). The 90-day period set by Title VII generally begins to run on the date "the complainant receives the right-to-sue letter." Id. (citations omitted). This 90-day filing period operates as a statute of limitations in Title VII cases and is not subject to extension, except where equitable considerations are found to apply. Mosel v. Hills Dep't Store, Inc., 789 F.2d 251, 253 (3d Cir. 1986); see also Burgh, 251 F.3d at 470 ("[I]n the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed.") While the date on the EEOC letter sent to Marshall, September 15, 2009, raised a concern that Marshall's December 24, 2009 civil complaint was untimely, Marshall has represented that he received this letter on September 26, 2009, (Doc. 31), and FedEx has elected to forego its argument regarding the timeliness of this particular filing in its motion to dismiss. (Doc. 34.) Therefore, this particular statute of limitations issue is no longer before us.

these briefing schedules, but he failed to meet this filing deadline. Instead, Marshall filed a response to this motion to dismiss on June 29, 2010, eleven days after the response deadline set by this Court. Marshall explained this latest litigation delay by asserting that his father had failed to mail the response in a timely manner. (Doc. 31.)

The motion to dismiss has now been fully briefed by the parties, (Docs. 28, 31, and 34) and is now ripe for resolution. For the reasons set forth below it is recommended that, to the extent that Marshall's amended complaint raises issues which were not presented to the EEOC or PHRC the complaint should be dismissed due to Marshall's failure to timely exhaust his administrative remedies. Furthermore, to the extent that Marshall has filed a pendent state claim of defamation against the Defendant, it is recommended that this claim also be dismissed as meritless, untimely and barred by the state statute of limitations for such actions. Finally, it is recommended that Marshall's retaliation claims, which were timely filed and administratively exhausted, be permitted to proceed forward at this time.

## II.    <u>Statement of Facts and of the Case</u>

In June 2005, Guy Marshall was hired as a package handler by FedEx. (Doc. 27-1. Ex. A.) In October 2005, Marshall was discharged by FedEx for tardiness, after having been cited for attendance violations by his supervisor. (<u>Id.</u>) Five months later

on March 27, 2006, Marshall filed an administrative employment discrimination complaint with the Pennsylvania Human Relations Commission ("PHRC"). (<u>Id.</u>)

In this complaint, Marshall advanced two specific, and narrow, claims. First, in Count 1 of his complaint, Marshall alleged employment retaliation and discrimination in connection with FedEx's decision discipline him for alleged attendance violations. According to Marshall, this discipline was imposed in a retaliatory fashion after he complained to a FedEx Operations Manager that he felt that a female service manager was allowed to get away with not doing her work because she was female. (<u>Id.</u>) Marshall's second administrative claim was closely related to this first allegation. (<u>Id.</u>) In Count 2 of his administrative complaint, Marshall charged FedEx with retaliation and discrimination in discharging him, asserting that he complained about "the different treatment" afforded to his female co-worker, and as a result, was discharged on October 21, 2005, ostensibly for attendance violations. (<u>Id.</u>)

Marshall's PHRC complaint was dual-filed with the EEOC and did not include any other race or gender discrimination or harassment claims, beyond these two specific and narrow assertions. On September 15, 2009, the EEOC issued a "Dismissal and Notice of Rights" to Marshall. (Doc. 27-1, Ex B.) This notice, in clear and precise terms, advised Marshall of the outcome of these inquiries and informed him that if he wished to further litigate this matter: "Your lawsuit must be filed **within 90 days** of

your receipt of this notice; or your right to sue based on this charge will be lost." (Id.)(emphasis in original.)

Marshall filed his complaint in federal court on December 24, 2009. (Doc. 1.) Four months later, on April 26, 2010, Marshall amended his complaint. (Doc. 19.) In this amended complaint, Marshall broadly alleged that "he was, discriminated against because of his race and gender. He was also harassed and retaliated against for filing an internal complaint, oral complaint and written complaint with his supervisors pertaining to the restructuring of his workload assignment. The restructuring created a hostile work environment between [him]self and other employees." (Doc. 19, ¶ 5.)

Marshall then advanced a series of claims which are in many instances different from, and broader than, those originally set forth in his March 2006 administrative complaint. For example, Marshall now appears to assert that FedEx's attendance policy was enforced in a broadly discriminatory fashion, alleging that his supervisor at FedEx did not discharge white employees who accumulated three or more absences within a 30 day period, in violation of FedEx Ground's attendance policy. (Id., ¶ 6.) According to Marshall's Amended Complaint, FedEx Ground also did not follow its attendance policy for similarly situated employees and discriminated against him by not providing him with oral and written warnings prior to the termination of his employment. (Id., ¶ 10.) Marshall also asserts a new allegation, namely, that "a FedEx

Alert Line investigator found that the sections supervisors were not enforcing the attendance policy at the time of Plaintiff's employment from May 2 thru October 14, 2005." (Id., ¶ 3.)

Marshall then goes on to advance a new, and broader, series of allegations against FedEx in this complaint relating to what he claims was a discriminatory practice with respect to unfavorable work assignments. Specifically, Marshall contends that he received less favorable assignments than female co-workers. Yet, while advancing this gender-based claim, Marshall also concedes that he was assigned the same work as a male Caucasian package handler, and further acknowledged that a female co-worker also handled similar work, stating: "[a male] caucasian [co-worker] was able to load 4 trucks on a daily basis. [a female co-worker] was able to scan all four trucks every night . . . . then management shifted her work to Plaintiff." (Id., ¶ 8.) According to Marshall, however, his female co-worker, "intentionally assisted her superiors to restructure [Plaintiff's] assignment," a new and distinct assertion not made by Marshall in his original administrative complaint. (Id., ¶ 9.)

Further, Marshall's complaint advances in a summary fashion a claim against FedEx based upon allegedly defamatory letters. (Id., ¶ 15.) On the basis of these new, and shifting, allegations, Marshall claimed that he was "subjected to the following: violation of the Human Relations Act; violation of Title VII of the Civil Rights Act

of 1964; retaliation; unjust enrichment; harassment; hostile work environment; defamation; gender/racial discrimination." (Id., at 4.)

On June 2, 2010, FedEx moved to dismiss this complaint. In its motion, FedEx argued that Marshall's complaint was flawed in several fundamental ways: First, FedEx contends that the Title VII claims set forth Marshall's complaint are fatally flawed in at least one respect. According to FedEx, in order to proceed on broad Title VII claims alleging race and gender discrimination and/or harassment, Marshall was required to file a charge of discrimination with the EEOC within 300 days of any such discrimination or harassment. With the exception of the narrow fact-specific retaliation claims made by Marshall in his administrative complaint, FedEx asserts that Marshall did not timely exhaust the claims set forth in his amended complaint and, therefore, such claims are barred. FedEx also contends that, to the extent that Marshall has filed a pendant state claim of defamation, that claim is meritless, and is barred by the state statute of limitations for such actions. Finally, FedEx contends that Marshall's retaliation claims fail as a matter of law, and should be dismissed.

## III. **Discussion**

### A. **Rule 12(b)(6)– The Legal Standard.**

The Defendant has filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be

dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459

U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> In keeping with the principles of <u>Twombly</u>, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 1950.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

### B. <u>Marshall Has Failed to Properly Exhaust His Administrative Remedies</u>

At the outset we find that dismissal of the broadly framed sex and race discrimination claims set forth in Marshall's April, 2010 amended complaint is

warranted here because the complaint raises, in an untimely fashion, concerns that were never properly exhausted administratively before the PHRC or the EEOC.

Title VII creates a legal framework for the resolution of work-related discrimination claims which first provides for administrative relief in these cases. In this setting, where Congress has provided administrative agency relief for private parties:

> It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief. McKart v. United States, 395 U.S. 185, 193(1969). ...[T]he purposes of the exhaustion requirement are to promote administrative efficiency, "respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors," provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record. Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir.1986).

Robinson v. Dalton,  107 F.3d 1018, 1020 (3d Cir. 1997).

Thus, for persons like Marshall, who turn to Title VII to pursue employment discrimination claims, there is a necessary prerequisite to filing a lawsuit in federal court:

> Under Title VII, before a claimant may bring suit in federal court, she must exhaust her administrative remedies. See Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3d Cir.1997). . . . In a deferral state such as Pennsylvania the time-frame for such a filing is "300 days after the alleged unlawful employment practice occurs." Bailey v. United Airlines, 279 F.3d 194, 197 (3d Cir.2002); see also 42 U.S.C. § 2000e-5; Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413-14 (3d Cir.1991) (en banc).

> "It is well established that for purposes of filing a charge alleging unlawful discharge, the limitations period must be measured from the date on which the employee was advised of the decision to terminate ... her employment." Bailey, 279 F.3d at 198.

Baker v. Office Depot, Inc., 115 F.App'x 574, 576 (3d Cir. 2004).

Where a plaintiff fails to properly exhaust claims before the EEOC within the 300 day deadline mandated by statute, that failure to exhaust acts as a bar to filing suit in federal court. See, e.g., Saracino v. New Jersey Dep't. Of UI/DT Finance, 251 F.App'x 95 (3d Cir. 2007); Hammer v. Cardio Medical Products, Inc., 131 F.App'x 829 (3d Cir. 2005). Moreover, this exhaustion requirement is issue-specific. Therefore

> Before filing a lawsuit, a plaintiff must exhaust . . . administrative remedies by filing a timely discrimination charge with the EEOC. *Id.* §§ 2000e-5(b), (e)(1), (f)(1). The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before [he] can initiate a private action. The ensuing suit is limited to claims that are within the scope of the initial administrative charge. "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." After a charge is filed, "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination....'" Although this standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form, it does prevent a plaintiff from "greatly expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge." Because the EEOC is required to serve notice on the employer against whom the charges are made, this standard also allows an employer to be put on notice of the claims likely to be filed against it.

Barzanty v. Verizon PA, Inc., 361 F. App'x. 411, 413-14 (3d Cir. 2010)(citations omitted).

In this case, Marshall's amended complaint runs afoul of this administrative exhaustion requirement. Fairly construed, that amended complaint makes a series of broad employment discrimination claims and assertions regarding widespread, institutional misconduct relating to workplace practices at FedEx, all of which Marshall contends are cognizable under Title VII. (Doc. 19.) Yet, with the exception of his assertion that he was disciplined, and then discharged, in retaliation for complaining about allegedly disparate treatment of female co-workers, none of these far-reaching allegations were embraced in Marshall's initial administrative complaint, which presented two narrow, and fact-specific, claims of discrimination. Furthermore, none of these far-reaching allegations were presented to the EEOC within 300 days of Marshall's October 2005 discharge, as required by law. Baker v. Office Depot, Inc., 115 F.App'x 574, 576 (3d Cir. 2004). Since the allegations of employment discrimination set forth in Marshall's amended complaint differ materially from those presented to the EEOC, and many of those new allegations were not properly exhausted through agency proceedings, Marshall should be precluded by his own dilatory behavior from advancing these claims in federal court. Barzanty v. Verizon

PA, Inc., 361 F. App'x. 411, 413-14 (3d Cir. 2010). Rather, Marshall's Title VII

claims should be limited to the specific retaliation claims initially advanced by the

Plaintiff before the EEOC and the PHRC.[2]

## B. Marshall's State-law Defamation Claims Are Meritless and Untimely

---

[2]Finally, in addition to these procedural defaults we note that Marshall defaulted on one other important procedural deadline in this case by failing to respond to this motion to dismiss in a timely fashion, despite being ordered to do so by the Court. This procedural default frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants also could lead to dismissal of the action, since this Court's order and Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fifteen (15) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within five (5) days after service of the motion. Any respondent who fails to comply with this rule shall be deemed not to oppose such motion.

Local Rule 7.6 (emphasis added).

Marshall is advised to abide by timetables set by this Court in the future, since the failure to adhere to court orders may include the sanction of dismissal. While this procedural default might also justify dismissal of this action in its entirety, we recommend that the Court should only dismiss those claims, as to which Marshall failed to timely exhaust his administrative remedies in accordance with the limitations prescribed by statute under Title VII.

Liberally construed, Marshall's complaint also contains an allegation that FedEx in some fashion defamed him when it responded to his initial administrative complaint filed in 2006 with the PHRC and the EEOC. To the extent that Marshall is bringing a pendent state-law defamation claim in this federal employment discrimination lawsuit, this defamation claim is fatally flawed in two fundamental ways.

First, these claims are time-barred. To the extent that Marshall is making a belated state-law defamation claim in this federal lawsuit, the state statute of limitations applied to these pendent state law claims. See Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000). As a matter of state law Marshall's defamation claim is subject to the one-year statute of limitations set forth in 42 Pa.C.S. § 5523(1). See, e.g., Palmer v. City of Harrisburg, 276 F.App'x 105 (3d Cir. 2008); Pro Golf Mfg, Inc. v. Tribune Review Newspaper Co., 570 Pa. 242, 809 A.2d 243 (2002). Since the allegedly defamatory statements made by FedEx occurred in response to Marshall's March 2006 administrative complaint to the PHRC, these statements fall outside the one-year limitations period between December 24, 2008 and the filing of his complaint on December 24, 2009. Accordingly, on the face of the pleadings Marshall's defamation claim falls beyond this one-year period and would be barred by the statute of limitations.

While Marshall appears to seek to avoid the bar of the statute of limitations by claiming that he only recently discovered these allegedly defamatory statements, this assertion cannot save Marshall's defamation claim, which suffers from a basic defect on its merits. More fundamentally, Marshall's state-law defamation claim, which is premised upon an assertion that FedEx defamed him when it responded to his PHRC complaint fails as a matter of law because this Court has previously concluded that such statements, made in quasi-judicial administrative proceedings, are absolutely privileged and may not support a claim for defamation. Indeed, as this Court has aptly observed when dismissing a similar defamation claim arising in the context of an employer's response to state administrative proceedings brought by a disgruntled, discharged employee:

> Defendants cannot be held liable for defamation for information submitted to or statements made before the PHRC, the Pennsylvania Department of Labor and Industry, or the Pennsylvania Unemployment Compensation Board of Review. These are quasi-judicial proceedings and an absolute privilege is afforded to them. See Joyner v. Sch. Dist. of Phila., 313 F.Supp.2d 495, 502 (E.D.Pa.2004) ("[A]bsolute privilege has been applied to quasi-judicial proceedings as well."); see also Milliner v. Enck, 709 A.2d 417, 419 n. 1 (Pa.Super.1998). It is well settled that "[w]hen alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." Greenberg v. Aetna Ins. Co., 427 Pa. 511, 235 A.2d 576, 577 (1967). Information submitted by Defendants regarding Plaintiff's alleged harassment of a female co-worker would have been material to the proceedings. As such,

> Defendants are afforded an absolute privilege and cannot be held liable for defamation with respect to information or statements made during a quasi-judicial proceeding. Thus, the Court will grant Defendants' motion to dismiss Plaintiff's defamation claims.

Foster v. JLG Industries, 372 F.Supp.2d 792, 801-02 (M.D.Pa. 2005).

In sum, Foster controls here, and compels dismissal of any common law defamation claim premised upon an employer's response in administrative adjudicative proceedings to a disgruntled employee's claims of discrimination. Therefore, consistent with Foster, it is recommended that this common law defamation claim be dismissed.

### C. The Merits of Marshall's Title VII Retaliation Claim Turns On Matters Outside the Pleadings and Cannot be Resolved Through a Motion to Dismiss

Finally, in its motion to dismiss FedEx asserts that Marshall's Title VII retaliation claims, which it concedes were administratively exhausted, fail as a matter of law. At this early stage in this litigation this claim warrants only brief consideration.

In the context of a motion to dismiss under Rule 12(b)(6), we are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).

Moreover, when assessing the adequacy of a complaint, we must also liberally

construe the pleadings of a *pro se* litigant like Marshall.

With respect to retaliation claims like those advanced by Marshall:

Title VII provides:

It shall be an unlawful employment practice for an employer to
discriminate against any of his employees ... because he has opposed any
practice made an unlawful employment practice by this subchapter, or
because he has made a charge, testified, assisted, or participated in any
manner in an investigation, proceeding, or hearing under this
subchapter.42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff
must tender evidence that: "(1) [he] engaged in activity protected by Title
VII; (2) the employer took an adverse employment action against her;
and (3) there was a causal connection between . . . participation in the
protected activity and the adverse employment action." Nelson v. Upsala
Coll., 51 F.3d 383, 386 (3d Cir.1995).

Moore v. City of Philadelphia,461 F.3d 331, 340-41 (3d Cir. 2006).

Moreover,"[w]ith respect to 'protected activity,' the anti-retaliation provision of Title

VII protects [both] those who participate in certain Title VII proceedings (the

"participation clause") and those who oppose discrimination made unlawful by Title

VII (the "opposition clause"). Slagle v. County of Clarion, 435 F.3d 262, 266 (3d

Cir.2006). Whether the employee opposes, or participates in a proceeding against, the

employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII.' Id. at 431.

Construing Marshall's *pro se* complaint liberally, and in a light most favorable to the Plaintiff, we recommend that FedEx's motion to dismiss these retaliation claims be denied. Fairly read, Marshall's retaliation claims allege that in 2005 he engaged in conduct opposing sex discrimination in the workplace. Marshall contends that as a result of this opposition to workplace discrimination he was subjected to adverse employment actions, in the form of both discipline and discharge from FedEx. Such allegations state a viable retaliation claim under Title VII, and are not subject to dismissal on the pleadings. Therefore, it is recommended that the motion to dismiss these retaliation claims be denied.

## IV. __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that, with the exception of the narrow fact-specific retaliation claims made by Marshall in his administrative complaint, Marshall has failed to timely exhaust the broad Title VII claims set forth in his amended complaint and, therefore, such claims are barred and should be DISMISSED. To the extent that Marshall has filed a pendant state claim of defamation, IT IS FURTHER RECOMMENDED that the Court find that this claim is also meritless, is barred by the state statute of limitations for such actions, and

should be DISMISSED. Marshall's remaining Title VII retaliation claims were administratively exhausted, state a viable retaliation claim under Title VII, and are not subject to dismissal on the pleadings. Therefore, IT IS RECOMMENDED that the motion to dismiss these retaliation claims be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 13th day of July, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
